UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 SEP 26  PM 4: 19

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| ANATOLY KISHINEVSKI<br>Pro Se<br><br>Plaintiff ,<br><br>v.<br><br>NICHOLAS J. DEML, Commissioner of the<br>Vermont Department of Corrections (VTDOC);<br>JEFF PERCY, Supervisor of the VTDOC<br>Hartford Probation and Parole office;<br>EDWARD ADAMS, Probation & Parole<br>Officer of the VTDOC; JUSTIN GORECKI,<br>Community Correctional Officer of the<br>VTDOC; Honorable ELIZABETH MANN,<br>Presiding Judge, Orange County Vermont<br>Superior Court; COLIN SEAMAN, State's<br>Attorney for Orange County Vermont;<br>VERMONT DEPARTMENT OF<br>CORRECTIONS<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.:  2.23 cv-429 |

(This complaint is filed against all Defendants
in their Official Capacity)

**VERIFIED COMPLAINT**

The Plaintiff, Anatoly Kishinevski, proceeding pro se, complains against the Defendants

for violation of his First Amendment constitutional rights to free speech and freedom of religion,

as well as for violations of his Fourteenth Amendment right to due process, as follows. Pursuant

to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of

all issues so triable.

## PARTIES

1.      Plaintiff Anatoly Kishinevski is an Orthodox Jew and scientist, currently under community supervision by Vermont Department of Corrections (hereinafter "VTDOC") Hartford Probation and Parole office. Plaintiff is a resident of 228A Industrial Dr., Bradford, VT 05033.

2.      Defendant Nicholas J. Deml is the Commissioner of Corrections for the VTDOC with office address, NOB 2 South, 280 State Drive, Waterbury VT 05671-2000.

3.      Defendant Jeff Percy is Supervisor of the VTDOC Hartford Probation and Parole office, 118 Prospect St #200, White River Junction, VT 05001.

4.      Defendant Edward Adams is a Probation & Parole Officer of the VTDOC Hartford Probation and Parole office, 118 Prospect St #200, White River Junction, VT 05001. He is the Plaintiff's probation officer and he reports to Jeff Percy.

5.      Defendant Justin Gorecki is a Community Correctional Officer of the VTDOC Hartford Probation and Parole office 118 Prospect St #200, White River Junction, VT 05001. He is Edward Adams deputy, whom Plaintiff reports to when Edward Adams is not available.

6.      Defendant, the Honorable Elizabeth Mann is the presiding Judge at Orange County Superior Court, 5 Court Street, Chelsea, VT 05038 . The Honorable Elizabeth Mann gave order for Plaintiff's probation conditions during Plaintiff's sentencing and has given entries to Plaintiff's subsequent motions seeking clarification on his probation conditions.

7.      Defendant Colin Seaman is the State's Attorney for Orange County, Vermont with office address 30 Upper Village Rd, PO Box 116, Chelsea, VT 05038. He serves as a legal reference to Edward Adams and Jeff Percy including for matters mentioned in this complaint.

8.      Defendant Vermont Department of Corrections has principal office address of NOB 2 South, 280 State Drive, Waterbury VT 05671-2000

## JURISDICTION AND VENUE

9.      This case is brought pursuant to 42 U.S.C. § 1983. The case arises under the Constitution and the laws of the United States and presents a federal question within the Court's jurisdiction under Article III of the Constitution and 28 U.S.C. §§ 1331 & 1343.

10.     The Court has the authority to provide appropriate injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

11.     The Court has authority to grant a writ of habeas corpus and declaratory relief pursuant to 28 U.S.C. §§ 2241 & 2254

12.     Venue in the District of Vermont is proper under 28 U.S.C. § 1391(b) as a substantial part of the acts giving rise to Plaintiffs' claims occurred in this District.

## PRELIMINARY STATEMENT

13.     Plaintiff, Anatoly Kishinevski is a natural-born U.S. citizen, Orthodox Jew and an accomplished scientist. He is 38-years old and is married to a 31-year old Canadian citizen who lives in Quebec. They both worked in their respective home countries and they maintained a cross-border relationship 140miles apart, traveling back and forth for weeks or months at a time to see each other.

14.     In January 2022, while his wife was visiting from Canada, the Plaintiff was detained in Vermont and held without bail on life-sentence criminal charges that stemmed from allegations made against him by his wife. Through the discovery phase of the Plaintiff's criminal case, digital forensics and analysis of the content of his cell phone were completed, revealing extensive credibility issues of Plaintiff's wife, the complaining witness.

15.     Upon emergence of these credibility issues a plea agreement was settled including a single amended charge with the initial charges being dismissed with prejudice.

16.     On Jan 12th, 2023 Plaintiff was released after 363 days of time served and placed

on probation. One of his probation conditions prohibits him from communication with his wife either directly or via third party, without explicit written permission provided to him, in advance by his probation officer. See Exhibit 1, condition 103

17.    The Plaintiff lives in Vermont and upon his recent conviction of a felony, is no longer permitted to enter Canada where his wife continues to live.

18.    On February 13, 2023, the Plaintiff was served a copy of a complaint and an application for annulment of marriage that was filed at the District of Saint-Hyacinthe Superior Court, Province of Quebec, Canada, by the Plaintiff's wife.

19.    The application submitted by the Plaintiff's wife contains over one-hundred very serious allegations that cannot be left unaddressed as they put the Plaintiff at great risk of losing liberty and property.

20.    The Plaintiff's wife is represented by counsel in Quebec.

21.    Needing to represent himself in the matter due to lack of financial resources and in recognizing that legal procedures which will be required of the Plaintiff are forms of third party communication, the Plaintiff asked his probation officer for permission to represent himself.

22.    The probation officer generally consented verbally that the Plaintiff's actions through the formal legal procedure were permitted and would not be treated as third party communication.

23.    To be in compliance with his probation condition that requires consent for third party communication to be in writing, the Plaintiff asked for his probation officer to put the permission in writing.

24.    From March 2023 to present, the probation officer has provided multiple "consent" letters to the Plaintiff, none of which the language clearly gives written permission to

the Plaintiff to represent himself. The language in each letter has either been ambiguous providing no coherent meaning or the letter gives vague consent, but without clarity as to what the Plaintiff is actually being given permission to do. The most recent letter is from April 19th, 2023. See Exhibits 2 and 3.

25.    Each permission letter that has been provided to the Plaintiff has included the phrase, *"It is recommended that your attorney review all your court communications to ensure compliance with probation conditions."* This phrase contradicts the entire purpose the letter is supposed to accomplish, allowing the Plaintiff to represent himself and serve as his own attorney.

26.    Multiple attorneys have reviewed the letters of consent provided by the probation officer and they have expressed the letters are insufficient in their verbiage to grant the Plaintiff permission to be self-represented. See Exhibit 4. The Plaintiff has also been advised that he must get explicit written permission to be self-represented and that anything short of that is not sufficient to indemnify him from third-party communication in the act of representing himself, with respect to his probation conditions.

27.    The lack of clear written permission from the probation officer has caused enormous prejudice to the Plaintiff who has been obstructed from resolving the pending civil matter in Quebec which has now been slowly dragging on for 7-months.

28.    The Quebec Code of Civil Procedure is the book of statutes which the pending annulment proceeding is governed by in the venue of Quebec. The Quebec Code of Civil Procedure has finite time frames for which steps in the civil process must be completed. The pending annulment proceeding is rapidly approaching the deadline for which an application for setting down a trial must be completed by the parties and submitted to the respective Quebec Court, if a settlement is not reached.

29.     The Plaintiff and his wife's counsel are attempting to work together to resolve the pending marriage annulment matter by means of arriving at a settlement agreement, but the Plaintiff is constrained from freely communicating with his wife's Canadian counsel because his probation officer has refused to provide clear written expressed consent that the Plaintiff may represent himself. See Exhibit 5

30.     In his attempt to get explicit consent that he can represent himself, the Plaintiff sought intervention from the Orange County Court on numerous occasions through motions to modify or clarify his probation conditions See Exhibits 6,7,10 (section 8), 11 and 12. In each attempt the Plaintiff has been met with underwhelming commitment to uphold constitutional principles by all of the involved government officials, including the Honorable Court of Orange County Vermont. See Exhibits 8, 9 and 13 ( at 11min29sec – 15min25sec)

31.     In the most recent motions hearing, on September 20th, 2023 the presiding Justice literally laughed when the Plaintiff raised valid points regarding lack of due process. See Exhibit 13 (at 12min27sec).

32.     As the presiding Judge and prosecutor that were present at the hearing are experienced legal professionals, it seems unlikely they failed to understand the Plaintiff's communication about lack of due process. It appears their conduct was a deliberate effort to avoid addressing the Plaintiff's legitimate concerns about lack of due process.

33.     On Aug 17th, 2023 Plaintiff's wife's Canadian counsel, by email, proposed to the Plaintiff terms in which the Parties could settle the pending annulment matter. The Plaintiff wishes to generally accept the settlement agreement, but with additional terms he would like to propose in his response. However, the Plaintiff is afraid to communicate with his wife's Canadian counsel as his probation conditions prevent him from doing so and his probation officer has refused to give him explicit written permission that he may represent himself,

effectively holding him captive by lack of clarity as to what actions could result in his loss of liberty i.e. 14th Amendment Due Process violation.

34.     The Plaintiff refrained from replying in detail to the August 17th settlement offer and told his wife's Canadian counsel he needs more time to respond.

35.     On September 20th, 2023 at 9:02 AM, the Canadian counsel emailed the Plaintiff and said that if a response to their offer to settle is not given before October 2nd, 2023 the offer to settle will no longer exist. The Canadian attorney's first language is French. See Exhibit 12.

36.     The Plaintiff was not expecting his wife's Canadian counsel to abruptly give notice of a short deadline to settle. Now the Plaintiff has only a matter of days to negotiate a settlement agreement with his wife's attorney,  or he may lose his ability to do so entirely.

37.     The Plaintiff has struggled as quickly as possible to figure out how to navigate and participate in the court processes as a pro se litigant. It has taken from Feb 13th, 2023 to present, a duration which has consisted of pure anguish and agonizing effort, to understand the probation office and the State of Vermont are not going to help the Plaintiff and he needs the help of the Federal court to intervene and to grant him relief from the constitutional rights violations he has been suffering for over 6-months.

38.     This complaint and prayer for relief has been submitted as quickly as possible with respect to the entirety of the events summarized in this complaint. The Plaintiff would have submitted this action months ago, but did not know how.  It has taken months of relentless research and effort to reach this point.

### Factual Background

39.     The Plaintiff, Anatoly Kishinevski is a 38-year old Orthodox Jewish man, a first generation natural-born Soviet-American and is educated and accomplished as a scientist and physicist.

40.     The Plaintiff is married to a 31 year old woman that is a Canadian citizen who lives in Quebec in the greater Montreal area.

41.     Plaintiff's wife suffers from mental health issues and receives disability payments from the Government of Quebec in acknowledgment of this. Exhibit 14 (at 18min58sec)

42.     The Plaintiff was detained in Vermont from Jan 14th, 2022 until Jan 12th, 2023 on life sentence charges stemming from allegations made against him by his wife.

43.     Digital forensics were conducted of the Plaintiff's cell phone during his criminal case. The information from that discovery effort combined with additional evidentiary material, revealed significant credibility issues of the complaining witness, the Plaintiff's wife.

44.     The criminal case was resolved by a plea agreement.

45.     The Plaintiff was released on January 12th, 2023 and placed on probation. He was given about twenty probation conditions including, condition number 103 which states:

> You shall not have any contact with your victim/s (including letters, phone calls, tapes, videos, electronically, or any form of contact through a third party), unless approved, in advance and in writing, by your Probation Officer or designee.

46.     On February 13th, 2023, the Plaintiff was served a copy of an application for annulment of marriage which was filed in the District of Saint Hyacinthe Superior Court, in Quebec Canada, which is where the Plaintiff's wife continues to live.

47.     Having no financial resource to hire an attorney to represent him in the Canadian marriage annulment proceeding, the Plaintiff is in a position in which he must represent himself.

48.     Although the Plaintiff is not permitted to travel to Canada, it is possible that he can successfully manage all necessary tasks to resolve the annulment matter remotely.

49.     On February 20th, 2023 the Plaintiff met with his former criminal defense

8 of 26

attorney in Chelsea, VT and the Plaintiff explained that he was completely out of money and that for the Canadian marriage annulment matter, he needed to represent himself.

50.     The Plaintiff's former criminal defense attorney explained to the Plaintiff that attorney-attorney communication is 100% protected from being treated as third party communication, but there was no guarantee that if the Plaintiff represents himself and speaks to his wife's attorney, that he will be given the same "attorney communication privilege". The criminal defense attorney cautioned the Plaintiff that the VTDOC or State prosecutor could treat his actions of representing himself as third party communication and there is no guarantee they will not.

51.     In recognizing that representing himself will require activities that are third party communication, in observation of his probation condition number 103, the Plaintiff sought consent from his probation officer that he may represent himself.

52.     On February 21st, 2023 at 9:30 AM, the Plaintiff met with his probation officer Ed Adams in his office at Hartford Probation and Parole, White River Junction, Vermont. The meeting was a weekly probation meeting for supervision purposes and to check on the status of the Plaintiff after his recent release.

53.     During this February 21st meeting the Plaintiff expressed to his probation officer Ed Adams that he wished to file a response to the annulment application with the Quebec court, but was worried about his actions being treated as third party communication, resulting in the Plaintiff being in violation of his probation. Ed Adams explained to the Plaintiff that legal processes do not constitute third party communication and that the Plaintiff can reply to the annulment application, but to use only official legal procedure i.e. through the court and or attorney (s).

54.     The Plaintiff left the February 21st meeting feeling very uncomfortable because

during his period of detention within a VTDOC facility, the Plaintiff observed and experienced tremendous dishonesty within the agency, some of which the Plaintiff had been a victim of and had been harmed by directly.

55.     As a result of his experience while detained, the Plaintiff is conditioned not to trust VTDOC personnel and he has learned that neither words nor actions of VTDOC personnel can be taken for face value as being sincere. See ¶¶ 72 and 75-78 of this complaint.

56.     Even though the Plaintiff's probation officer had explained to him that legal process are not treated as third-party communication, the Plaintiff did not feel reassured and was scared to proceed.

57.     On or about Feb 24th, 2023 Justin Gorecki, a Community Correctional Officer, conducted a field visit and visited the Plaintiff at his residency. Justin Gorecki is always an exceedingly kind person and the Plaintiff felt comfortable sharing with him that he was worried about his actions in the Canadian court process being treated as third party communication by the probation office. Justin reassured the Plaintiff that as long as the Plaintiff follows official court procedure, that his actions in representing himself with the marriage annulment proceeding would not be treated as third party communication.

58.     The Plaintiff still felt very uncomfortable and lacked confidence in the consent he had been given, so he remained afraid to represent himself.

59.     While thinking about what to do, the Plaintiff realized that he needed to get the permission to represent himself in writing. Then he would be fully within compliance with his probation conditions and would not have worry anymore.

60.     On February 28th, 2023 the Plaintiff emailed his probation officer Ed Adams and asked him to please give the plaintiff permission to represent himself in writing.

61.     At the next meeting between the Plaintiff and Ed Adams, on March 1st 2023, a

document was provided to the Plaintiff from Ed Adams and it was stated to be a permission

letter for the Plaintiff to represent himself in the marriage annulment proceeding.

62.    The Plaintiff reviewed the letter and immediately identified the language of the

letter to be ambiguous, not fulfilling the purpose of giving clear consent to the Plaintiff to

represent himself. The letter stated:

> To Anatoly Kishinevski –
>
> You are approved to participate with the Court in matters related to your
> annulment/divorce. This does not violate your probation conditions regarding
> third party contact so long as you are addressing the court or submitting court
> required documents.
>
> You are still required to abide by all other contract restrictions involving your
> victim.
>
> It is recommended that your attorney review all your Court communications to
> ensure compliance with probation conditions.
>
> Edward Adams, Probation Officer

63.    The letter did not give the Plaintiff permission to interface with his wife's

attorney, which is required in order to participate in the basic civil procedure of Quebec. After

explaining this and the probation officer recognizing how troubling this was for the Plaintiff, the

probation officer agreed to make a change to the letter and added the phrase, "to include serving

copies to the victim's attorney", to the end of the first paragraph. See Exhibit 2.

64.    The Plaintiff was extremely distressed and expressed to Ed Adams that the letter

was grammatically unintelligible and contradicted itself and the Plaintiff asked him to please

rewrite it so the intent was clear and there was no ambiguity. The probation officer became

frustrated and told the Plaintiff that "anyone that read it would understand what it means". The

Plaintiff was persistent and told his probation officer that he could not rely on implied intent and

that the letter needed to be rewritten providing clear expressed consent.

65.    In that exchange with his probation officer and at that moment, the Plaintiff could not tell if the letter was a true example of the probation officer's writing ability and the grammar was a sincere attempt at a permission letter, or if the probation officer was intentionally using unclear language so that expressed written consent for self-representation was not actually given to the Plaintiff.

66.    Upon reaching a limit of being willing to discuss the letter any further, probation officer Ed Adams deferred the topic to his supervisor Jeff Percy. Ed Adams told the Plaintiff to wait in the lobby of the probation office for his supervisor, Jeff Percy.

67.    Within a few minutes Jeff Percy came and retrieved the Plaintiff from the lobby and brought him into a conference room and asked the Plaintiff about his concern. After listening to the Plaintiff express concern that the language of the letter was unclear, Jeff Percy took the letter from the Plaintiff and read it. Jeff Percy returned the letter to the Plaintiff and stated verbatim, "*This letter indemnifies you from third party communication through the court.*" Jeff Percy was very kind, but was also curt and made it clear that he was unwilling to discuss the topic any further with the Plaintiff.

68.    After his exchange with Jeff Percy, the Plaintiff left Hartford Probation and Parole feeling tremendous anguish. The Plaintiff is an educated person with professional writing experience and was able to immediately identify that the consent letter he received did not provide expressed consent for the Plaintiff to represent himself, but Ed Adams and Jeff Percy tried to convince the Plaintiff that the letter did provide expressed consent. This made the Plaintiff feel scared that the people that are in charge of him and have the ability to revoke his freedom, lack sincerity, honesty and integrity.

69.    The Plaintiff had been paying for limited legal services from attorney Charlene Marois, a family law attorney in Quebec. She was helping the Plaintiff to navigate Quebec civil

procedure so no irreversible deadlines were missed or mishaps occurred. The Plaintiff asked

attorney Charlene Marois to review the letter his probation officer had provided to him on

March 1st, 2023 and provide her analysis. See Exhibit 4. Attorney Charlene Marois provided her

professional opinion:

> Dear Mr. Kishinevski,
>
> In my professional opinion, the language of this letter is not clear in its intent
> and is not sufficient to properly indemnify you from third party communication
> through the court and legal proceedings.
>
> It is part of the Quebec Civil procedure, when self-represented, to communicate
> and exchange directly with your wife's lawyer including any request to be made
> directly to her lawyer for the court purposes.
>
> Therefore, the letter should be modified to add a section permitting you to be in
> contact with your wife's lawyer in the legal proceedings as our civil procedure
> will ask you to do so.
>
> I hope the present is clear. Do not hesitate to contact me if you have any
> questions or concerns.

70.    On April 11th, 2023 the Plaintiff sent an email to Jeff Percy, the supervisor of the

Plaintiff's probation officer. In the email the Plaintiff explained that an attorney had reviewed

the permission letter and concluded it was insufficient to give the Plaintiff permission to

represent himself. The Plaintiff asked Jeff Percy for confirmation by email that he had

permission to represent himself and also mentioned that there were impending deadlines for the

marriage annulment matter. Jeff Percy offered no response.

71.    On April 12th, 2023 at approximately 1pm, the Plaintiff met with his probation

officer Ed Adams. During this meeting the Plaintiff expressed concern to Ed Adams that the

language in the permission letter was unclear in its intent and that an attorney had reviewed it

stating it was insufficient to indemnify the Plaintiff from third party communication through the

court proceeding. In response, **Mr. Adams told the Plaintiff he would not change the**

**language of the letter, but not to worry because he (the Plaintiff) would not receive a probation violation for representing himself unless he "did something really conniving".**

72.    The Plaintiff left that meeting feeling agonizing stress about the situation as he needed to participate in the annulment proceeding but the Plaintiff was scared that he was putting himself in danger of receiving a probation violation for third party communication if he did.

73.    On April 18th at 12:04 PM, the Plaintiff emailed Jeff Percy again. In the email the Plaintiff repeated to Jeff Percy the analysis of the letter from attorney Charlene Marois and asked Jeff Percy to please confirm in writing that the Plaintiff was permitted to represent himself. Jeff Percy did not reply.

74.    On April 18th at 3:40 PM precisely, the Plaintiff called Jeff Percy on the telephone at the Hartford Probation and Parole office and asked Jeff Percy to kindly reply to the emails that had been sent requesting clarification about the Plaintiff's permission to represent himself. Jeff Percy replied to the Plaintiff by saying *"what emails?"* and presented the circumstance as if he had not seen any emails from the Plaintiff and did not know what emails the Plaintiff was referring to.

75.    The Plaintiff then explained to Jeff Percy when the emails had been sent (one of which had been sent only several hours prior) and specifically what the emails were requesting. Jeff Percy then told the Plaintiff, while they were still discussing the matter on the phone, that he (Jeff Percy) had just found them in his spam folder.

76.    The Plaintiff has sent dozens if not hundreds of emails to many different recipients that possess email addresses which are handled by the same *@vermont.gov* email server as Jeff Percy's email address and the Plaintiff has NEVER had a message fail to be delivered, nor has the *@vermont.gov* email server's filters sent the Plaintiff's emails to a spam

folder in a prior instance. Also, the Plaintiff corresponds with his probation officer Ed Adams regularly by email and the Plaintiff's email address is well known within the Hartford Probation and Parole office.

77.     On April 19th, 2023, after great persistence by the Plaintiff, Ed Adams provided a revised consent letter to the Plaintiff. In the exchange between Ed Adams and the Plaintiff, when the letter was physically transferred to the Plaintiff, Ed Adams explained he had worked with the State's attorney that morning to write the letter. Ed Adams was very supportive in his demeanor reassuring the Plaintiff that the letter was what the Plaintiff had been asking for and gave the Plaintiff permission to represent himself.

78.     The letter that was provided to the Plaintiff on April 19th, 2023, while an improvement, was still non-committal in its language in giving consent to the Plaintiff to represent himself, in full accordance with the Civil Code of Quebec, as is necessary for the Plaintiff to resolve the serious life event that is pending unresolved.

79.     At that moment, the Plaintiff recognized that the probation office was intentionally withholding consent for the Plaintiff to represent himself by method of providing permission letters with ambiguous verbiage.

80.     On April 20th, 2023 at precisely 2:20 PM, the Plaintiff called his probationer officer Ed Adams and asked if he, the Plaintiff, had understood correctly, that the letter provided the day prior was intended to be a permission letter for the Plaintiff to represent himself. The dialogue:

> Kishinevski: So, I'm trying to just make sure I understand, that letter I received from you, the intent of it is to give me permission to represent myself in the matter with my wife, in Canada. Is that correct?

> Ed Adams: Yes..

> Kishinevski: So I have permission to represent myself?

Ed Adams: (pause) You have permission to *participate* in the court process.
Yeah.

Kishinevski: When you say "participate", that language is not really explicit
and that's… so (silence, thinking) If I am not confident (silence,
thinking) I need to file a motion to get clarity granted by the judge
if I can't have explicit.. consent stated explicitly. I know you
worked with the State's attorney yesterday. I understand that. Do
you have any opposition to me representing myself generally?

Ed Adams: No.

Kishinevski: Okay.

81.     On April 21st 2023 the Plaintiff proceeding pro se, filed a motion for clarification
of his probation conditions with the Orange County Superior Court, which is the presiding court
that assigned the Plaintiff his probation conditions upon his release. See Exhibit 6.

82.     The motion was 5-pages long and summarized the course of events up to that
moment in laser precise detail including the Plaintiff's need to represent himself. Any person
with legal training that read the motion would be able to understand that the Plaintiff's due
process rights were being violated in several ways concurrently. See Exhibit 6.

83.     On April 25th, 2023 at 10:32 AM, the State's attorney for Orange County, Colin
Seaman filed a memorandum in opposition to the Plaintiff's motion in which he acknowledged
the Plaintiff's rights to exercise use of the law is restricted. See Exhibit 8. Attorney Seaman
stated in his memorandum:

"There is ample allowance for court business within the existing framework,
and any modification risks creating an ever broadening landscape of loopholes
that are at risk of exploitation."

84.     On April 25th, 2023 at 3:31 PM, The Honorable Justice of Orange County Court
made an entry in reply to the Plaintiff's motion and conveyed generally that it was believed that
no further modification of the probation condition was warranted. See Exhibit 9. Her entry

16 of 26

included the statement:

> "A responsive court filing will not be treated as a third-party communication with the victim nor would a communication with the victim's counsel that is responsive to claims presented in that court action."

85.     On May 11th, 2023, the plaintiff engaged in a telephone consultation with Attorney Harold Stevens from the Stevens Law Firm in Stow, Vermont. During this conversation, the plaintiff provided Attorney Stevens with an overview of the situation up to that date, including details regarding the Canadian annulment proceeding which the Plaintiff needed to represent himself. The Plaintiff also conveyed that, up to that point, he had received only vague consent to participate in the Canadian court proceeding, but the limits of what the Plaintiff was allowed and not allowed to do was not clear.

86.     Attorney Stevens told the Plaintiff that if there was any gray area at all, that he must get his probation conditions changed to state that the Plaintiff can represent himself. Attorney Stevens told the Plaintiff that is what he needed to do. The consultation was very short and the Plaintiff did not have the opportunity to ask any more questions.

87.     The Plaintiff was not sure what to do at that point because he did not have money for an attorney and had already attempted to motion the court to change his probation conditions, but his attempt had failed. The Plaintiff was concerned about being placed in contempt with the court if he tried to file another motion on the same topic.

88.     The Plaintiff spent every free moment of the next several months intensely studying as much relevant case law as he could get his hands on and he studying different legal procedures with the goal of determining what the most appropriate next step was. The Plaintiff concluded that he could motion the same court again if he believed there was a genuine error in the courts prior ruling.

89.     The Plaintiff already had a motions hearing scheduled for Sep 20th, 2023 at

Orange County Court on topics not related to the matters of concern in this complaint. With the hope that there would be an opportunity to address the lack of clear permission for the Plaintiff to represent himself in the Sep 20th hearing, the Plaintiff filed a motion on Sep 18th, 2023 addressing that topic, in time for it to be served to all parties including the State's attorney Colin Seaman. See Exhibit 10.

90.     The Motion filed on Sep 18th clearly explained that it was necessary in accordance with the Civil Code of Quebec that the Plaintiff be permitted to communicate freely with his wife's attorney including on more than just the claims that have been put forth in her marriage annulment application. The motion conveyed explicitly that it would not be possible to resolve the marriage annulment matter otherwise as Quebec Civil Procedure (Code) requires active participation between all parties in the spirit of and with the goal of promoting resolution of civil matters prior to litigation being required.

91.     In May, 2023 the Plaintiff shared with attorney Charlene Marois that he was struggling to get sufficient permission he needed to represent himself and that to date, the Plaintiff only had been given vague consent to communicate with his wife's attorney and the Quebec court in a manner responsive to the claims put forth by his wife.

92.     Attorney Charlene Marois explained to the Plaintiff that it would not be possible for the Plaintiff to resolve the annulment proceeding in any manner if he was not able to communicate freely with his wife's Canadian attorney on more than the claims. See Exhibit 11. In an email on this topic, Charlene Marois stated to the Plaintiff:

> Dear Mr Kishinevski,
>
> I cannot comment on the judge's decision.
>
> However, I can say that to fully exercise your right to be self represented, you will need to be able to address your wife directly in a cross examination if this file was to go to Court. You also need to be able to exchange with your wife's lawyer on more than claims she sets forward.

We suggest that you contact an attorney in Vermont to ensure the proper probation conditions are set.

Hopefully this is clear

93.    The Plaintiff submitted the email from attorney Charlene Marois to the Orange County Court in time for his Sep 20th motions hearing. See Exhibit 11.

94.    [1]During the Sep 20th motions hearing the Honorable Court did address Plaintiff's motion requesting the court revisit the probation condition restricting the Plaintiff from freely representing himself in the Quebec annulment proceeding. The Honorable Court expressed the opinion that sufficient permission had been given to the Plaintiff to tend to the matter in Canada. See Exhibit 13.

95.    When the Plaintiff was afforded the opportunity to present his argument, he conveyed to the court that to date the Plaintiff had only been given permission to "participate" in the annulment proceeding in Canada, which was vague. The Judge literally laughed when the Plaintiff presented his concern about this material due process violation. See Exhibit 13 (at 11min59sec).

96.    State's attorney Colin Seaman, stated on the record that the Plaintiff's argument about the word "participate" being vague was absurd and that he refused to participate in the discussion. See Exhibit 13 (at 12min29sec)

97.    The State's attorney and the presiding Judge were rude to the Plaintiff in response to his raising concern about legitimate legal principles which the Plaintiff has been

---

[1] During the September 20th hearing, Plaintiff's wife's American counsel was present and he made statements on the record that revealed he was not privy to or aware of the communication that had been ongoing between the Plaintiff and his wife's Canadian Counsel. If the record of the Sep 20th hearing is reviewed, the American counsel's (Mr. Handy) comments are misleading and should be disregarded. The Plaintiff has not received any indication from his wife's Canadian counsel that the Plaintiff can or should communicate about the Canadian family matter with the American attorney. Article 15 of the Quebec Code of Civil Procedure says that disclosing details of family legal proceedings to an outside party, without permission from the Canadian Judge is an offense for which someone can be held in contempt.

egregiously prejudiced by the neglect of.

98.    The State had not been afforded their full time allowance to respond to the Sep 18th motion and expressed they were not prepared to resolve the topics in that hearing. Hence it was agreed a motions hearing would be scheduled after the State had been afforded their window of opportunity to respond.

99.    The Plaintiff did not anticipate or realize that his wife's Canadian counsel was going to abruptly give a deadline for replying with terms to settle the annulment proceeding. From the Plaintiff's understanding there was still several more months left to attempt to settle the matter. See Exhibit 12.

100.    The Plaintiff has been working as quickly as possible to figure out how to navigate the legal system as a pro se litigant to secure his rights which should be his, free of infringement from arbitrary government action.

101.    A probationer is entitled to know exactly what actions may result in his loss of liberty, but the Plaintiff has not been afforded this privilege by the officials in power, in violation of the 14th Amendment due process clause.

102.    The Plaintiff is now in a situation where he has less than a week to reply to his wife's attorney with terms to settle the annulment proceeding. Failure to reply in time will likely result in loss of the possibility to settle the annulment matter which will leave proceeding to trial as the only option for resolution. The plaintiff wishes to settle the matter and does not wish to go to trial, but he is illegally constrained in his liberties and ability to resolve the matter.

## CLAIMS FOR RELIEF

### I.    VIOLATIONS OF PROCEDURAL DUE PROCESS, EQUAL PROTECTION BY THE LAWS

103.    Plaintiff re-asserts and re-alleges the factual allegations contained in ¶¶ 1-102.

104.    Plaintiff has fundamental liberty interests protected by the First and Fourteenth Amendments in being able to freely represent himself and make use the laws as he feel is appropriate per his own discretion to defend himself in an adversarial legal proceeding in which he is the Defendant.

105.    As is normal in a majority of civil and criminal venues, negotiation of a settlement or plea agreement between the parties is the most common method that cases are resolved. In the pending annulment proceeding between Plaintiff and his wife, which is a civil proceeding with the cause of action being accusations of fraud, this concept of negotiating a settlement agreement to minimize consequences to a Party, is applicable, and the Plaintiff wishes to exercise this strategy, but is illegally restricted from doing so.

106.    Since the Plaintiff was released from incarceration, Defendants have imposed conditions restricting Plaintiff from being able to represent himself in a serious legal proceeding in which it is possible he could lose liberty, property and familial relations. The restrictions have been made by the Defendants without providing Plaintiff the factual basis for the restrictions.

107.    The restrictions have been imposed by a combination of a probation condition set by the Orange County Court and a probation officer that retains discretionary power to restrict the probationers liberties through that probation condition, with no standards defined for use of his power.

108.    The Plaintiff's probation officer has refused to provide explicit and unambiguous written permission that the Plaintiff and can represent himself.

109.    The Honorable Court that controls the Plaintiff's probation conditions has refused to acknowledge the Plaintiff's constitutional right to Due Process and has allowed the arbitrary revocation of the Plaintiff's constitutional rights.

110.    The State's attorney has promoted deprivation of the Plaintiff's rights by

encouraging the Defendants to use strategies to arbitrarily restrict the Plaintiff's ability to freely exercise use of the law and to be able to represent himself.

111.    Due process requires timely and adequate notice detailing Defendant's reasons for restricting Plaintiff's right to equal protection of the laws.

112.    Defendants have no legitimate governmental interest that justifies depriving the Plaintiff the right to freely represent himself. As has been established exhaustively in prior rulings throughout the country, a probationer cannot be restricted from engaging in any legal behavior unless it is directly related to his rehabilitation or is necessary to ensure public safety.

113.    The Plaintiff's wife lives in a foreign country and is represented by counsel in that country. The Plaintiff's right to communicate with his wife's counsel poses no danger to his wife or any other person of any society.

114.    Depriving Plaintiff the right to participate in the Canadian marriage annulment proceeding is only causing additional undue hardship to the Plaintiff and his wife as the annulment proceeding has dragged on for many more months than was necessary, as the Plaintiff has been fighting to free himself from illegal infringement of his liberties and has been unable to effectively work with his wife's attorney.

## II.    VIOLATIONS OF FUNDAMENTAL HUMAN RIGHTS, RIGHT TO EFFECTIVE COUNSEL

115.    Plaintiff re-asserts and re-alleges the factual allegations contained in ¶¶ 1-114

116.    The right to effective counsel is recognized as a universal and fundamental human right.

117.    The Defendants have worked in a collective manner to deprive the Plaintiff of this fundamental human right. There has been active collaboration between the Plaintiff's probation officer and the State's attorney, Colin Seaman to restrict the Plaintiff's ability to enjoy equal access to and use of the law.

118.    The Honorable Justice Elizabeth Mann, whom presided over the Plaintiff's sentencing hearing where probation conditions were set, has neglected to protect the liberty interest of the Plaintiff, arbitrarily allowing other government officials to restrict the Plaintiff's human rights.

### III.    VIOLATIONS OF FUNDAMENTAL LIBERTIES PROTECTED BY SUBSTANTIVE DUE PROCESS, FREEDOM OF ASSOCIATION, AND/OR FREEDOM OF RELIGION

119.    Plaintiff re-asserts and re-alleges the factual allegations contained in ¶¶ 1-118.

120.    The Fourteenth Amendment to the U.S. Constitution provides that no "State shall deprive any person of life, liberty, or property, without the due process of law." Certain liberty interests are so fundamental that they cannot be deprived regardless of the procedures employed or justifications offered by the State, except in rare circumstances.

121.    The Plaintiff is a religious Jew. It is fundamental to Judaism that the greatest effort to make peace between a husband and wife is given. This is a religious law, that the Plaintiff is being deprived of his ability to follow, by constraints of his ability to represent himself.

122.    The Plaintiff is obligated to propose to his wife's attorney a means to reach peace in an attempt to repair their familial relations.

123.    G-d in Judaism is not a static being, but a dynamic becoming. Making peace between husband and wife is an act of G-d becoming. The Defendants are literally preventing G-d from being in the Defendant's life. This is the greatest prejudice that can exist.

124.    The restriction on the Plaintiff's ability to represent himself is egregiously depriving him of his sincerely held faith.

## IV.   VIOLATIONS OF DUE PROCESS

125.   Plaintiff re-asserts and re-alleges the factual allegations contained in ¶¶ 1-124

126.   The Fourteenth Amendment to the U.S. Constitution provides that no "State shall deprive any person of life, liberty, or property, without the due process of law."

127.   The Defendants have collectively given the Plaintiff vaguely defined permission to "participate" in the pending annulment matter between the Plaintiff and his wife. The language that has been used by the Defendants to give the Plaintiff permission to represent himself does not specify what the Plaintiff is allowed to do and what he is restricted from doing.

128.   In the Sep 18th hearing the Plaintiff asked the Honorable Elizabeth Mann,

"So are there any restrictions in how I may communicate with the victim's counsel as long as I am following whatever the laws of the applicable venue are?"

to which the Honorable Elizabeth Mann replied ambiguously that she can't answer the question. This illustrates the lack of definition of what the Plaintiff is allowed to do and not allowed to do in his attempts to represent himself. See Exhibit 13 (at 14min09sec).

129.   The Honorable Elizabeth Mann also attempted to define the limits of what the Plaintiff can and cannot due in his actions of representing himself by stating that they (Defendants) expect "reasonable actions and efforts" from the Plaintiff. See Exhibit 13 (at 14min29sec)

130.   The Defendants have failed to clearly define what actions may result in the loss of liberty of the Plaintiff which is a right afforded by the 14th Amendment.

### RELIEF REQUESTED

WHEREFORE, Plaintiff request that the Honorable Court:

a.   Assume jurisdiction of this case;

b.    Declare that Defendants' restrictions on his ability to represent himself in the marriage annulment proceeding between he and his wife are unconstitutional;

c.    Grant order that the Plaintiff is permitted to represent himself;

d.    Declare that the consent letters provided by Plaintiff's probation officer due not fulfill 14th Amendment Due Process Requirements;

e.    Issue a temporary restraining order, preliminary and permanent injunction permanently barring any further restraint on Plaintiff's ability to freely represent himself;

f.    Convert this Complaint to a Petition for Writ of Habeas Corpus per the courts evaluation of the facts and merits if deemed just and proper;

g.    Grant such other and further relief as the Court deems just and proper.

Dated: September 26th, 2023

Respectfully submitted,

*Anatoly Kishinevski*
*pro se*

By: _____

Anatoly Kishinevski
228A INDUSTRIAL DR.
BRADFORD, VT 05033
Tel: 802-449-3205
fishmousebear3@gmail.com

## VERIFICATION

I, Anatoly Kishinevski, who resides at 228A Industrial Dr., Bradford, Vermont, USA, herein do hereby Swear, Depose and Declare under penalties of perjury that:

1.    I am the Plaintiff in the present case, a citizen of the United States, and

a resident of Vermont.

2.    I have personal knowledge of myself, my activities, and my intentions,

including those set out in the forgoing *Verified Complaint*, and if called

on to testify I would competently testify as to the matters stated herein.

3.    I verify under penalty of perjury under the laws of the United States of

America that the factual statements in this complaint concerning myself,

my activities, and my intentions are true and correct

4.    I have read the foregoing pleadings by me subscribed and that the facts

therein stated are true to the best of my knowledge, information and

belief.

Subscribed and sworn to before me on
this 26th day of September , 2023

(Notary Print) Timothy Holden

(Notary Sign) _____

(Commission # or Seal) 157.0014082

(State) VT

(Plaintiff Print) Anatoly Kishinevski

(Plaintiff Sign) _____

(Date) Sep 26th , 2023

TIMOTHY HOLDEN
Notary Public, State of Vermont
Commission No. 157.0014082
My Commission Expires Jan. 31, 2025